**Tagged Opinion**



**ORDERED in the Southern District of Florida on March 05, 2007.**

Steven H. Friedman, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach

IN RE:                                    Case No.: 01-30953-BKC-SHF
                                          Chapter 7 Proceeding
ABRAHAM DAVID GOSMAN,

            Debtor.            /

**ORDER GRANTING DEBTOR'S MOTION TO DISMISS JPMORGAN CHASE BANK'S MOTION TO IMPOSE AN EQUITABLE LIEN ON HOMESTEAD**

THIS CAUSE came on to be heard on February 13, 2007 upon the Motion to Dismiss JPMorgan Chase Bank's Motion to Impose an Equitable Lien on Homestead, filed by debtor, Abraham David Gosman (C.P. 2005). By way of the debtor's motion, Mr. Gosman seeks to dismiss JPMorgan Chase Bank's Motion to Impose an Equitable Lien on Homestead (C.P. 1989). In the Motion to Impose an Equitable Lien, JP Morgan Chase Bank ("Chase") seeks to impose an equitable lien against the net sale proceeds derived from the sale of the home formerly occupied by the debtor

and Lin Castre Gosman, his putative wife[1], which net proceeds equal approximately $22,537,576.37. The net sale proceeds are being held by Joseph J. Luzinski, the duly appointed and acting chapter 7 trustee for this estate, pursuant to this Court's October 6, 2004 Order Denying in Part Trustee's Motion and: (A) Establishing Bidding, Sale and Noticing Procedures; (B) Approving Form of Notice; (C) Approving and Authorizing Payment of Advertising Budget as Advertising Expense; and (D) Scheduling Final Sale Hearing to Consider Approval of Purchase and Sale Agreement for Gosman Residence ("Bid Procedure Order" - C.P. 1506 entered in Case No. 01-30953-BKC-SHF). Chase predicates its equitable lien claim upon a "Negative Pledge" Agreement executed between the debtor and Chase on April 15, 1999, whereby the debtor ostensibly agreed that he would not sell, convey, or encumber any of his assets without the express written consent of Chase (Para. 9 of Chase's Motion to Impose an Equitable Lien on Homestead). Thereafter, the debtor allegedly violated the terms of the "Negative Pledge" Agreement (1) by encumbering his residence with a $17 million mortgage procured from City National Mortgage, which mortgage admittedly was paid in full upon the sale of the North County Road residence; and (2) by transferring $2 million to Lin Castre Gosman from the City National Mortgage loan proceeds. The debtor disputes that the circumstances *sub judice* warrant the imposition of an equitable lien. For the reasons set forth below, Mr. Gosman's Motion to Dismiss JPMorgan Chase Bank's Motion to Impose an Equitable Lien on Homestead is **granted** and JPMorgan Chase Bank's Motion to Impose an Equitable Lien on Homestead is **denied as moot.**

---

[1] Pursuant to the October 28, 2003 Opinion issued by the Honorable Larry Lessen, Visiting United States Bankruptcy Judge, in the adversary proceeding of *Joseph J. Luzinski, Trustee vs. Abraham D. Gosman and Lin Castre Gosman*, Adv. Pro. No. 02-3155-BKC-PGH-A (C.P. No. 355), the tenancy by the entireties exemption claimed by the debtor with regard to his former home, located at 513 North County Road, Palm Beach, Florida, was disallowed, on the basis that Lin Castre Gosman was not legally divorced from her former husband, Michael Castre, as of November 24, 1996, the date of the wedding ceremony of the debtor and Lin Castre Gosman.

## JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.§§157 and 1334(b), with the consent of the debtor and Chase[2]. This is a core proceeding in which the Court is authorized to hear and determine all matters relating to the instant dispute in accordance with 28 U.S.C. §§157(b)(2)(A), (b)(2)(B), and (b)(2)(K).

## SUMMARY OF BANKRUPTCY CASE

This case was commenced on March 2, 2001, with the debtor's filing of a voluntary chapter 11 petition. On June 25, 2002, the case was converted to a chapter 7 proceeding (C.P. 693). On July 1, 2002, and following an election of a chapter 7 trustee, Joseph Luzinski was confirmed as the chapter 7 trustee (C.P. 704). The debtor's schedules (C.P. 50) reflect ownership of real property valued at $40,000,000 and personal property valued at approximately $115,000,000. The debtor listed secured creditors of approximately $152,000,000 and listed general unsecured creditors of approximately $3,700,000. During the course of the trustee's administration of this case, the trustee has enjoyed considerable success in the recovery and liquidation of numerous assets of this estate, and presently holds in excess of $31 million, with the outcomes of various disputes pending.

## SYNOPSIS OF CLAIM BY JPMORGAN CHASE BANK TO EQUITABLE LIEN

Among the assets which the trustee has liquidated is the real property at 513 North County Road, Palm Beach, Florida, which was sold for $41,350,000. It is as to the net proceeds generated from the referenced sale against which Chase asserts an equitable lien for at least

---

[2] Pursuant to 7001(7), a party ordinarily would be required to commence an adversary proceeding to seek equitable relief. However, upon agreement of counsel, perhaps fostered by a mutual desire to expedite a disposition of the instant controversy, this Court entered its January 16, 2007 Modified Scheduling Order on JPMorgan Chase Bank's Motion to Impose an Equitable Lien on Homestead (C.P. 1995), scheduling this matter for February 7, 2007.

$17,000,000. Chase predicates its entitlement to an equitable lien largely upon its contention that the debtor could have utilized resources available to him during the course of his relationship with Chase to reduce the indebtedness owed to Chase, but instead, chose to utilize his funds elsewhere, including the acquisition and maintenance of the North County Road property. In its complaint initiating this adversary proceeding, Chase contends that in January, 1998, in conjunction with the debtor's operation of various health care-related enterprises, Chase extended to the debtor and to various entities controlled by him a $65 million credit facility, which included a $25 million line of credit. In 1998 and 1999, and as Mr. Gosman's business enterprises were failing, Chase sought additional collateral from the debtor to secure repayment of its loans. Ultimately, the debtor agreed to execute a "negative pledge agreement" in favor of Chase ( C.P. 12 - Paragraph 31 of Amended Complaint Objecting to the Debtor's Exemptions and Seeking to Recover Fraudulent Transfers), ostensibly providing Chase with additional assurance that he would fully repay his obligations. Chase contends that the debtor violated the terms of the negative pledge agreement by, among other things, procuring a $17 million loan from City National Bank, secured by a mortgage on the North County Road property. According to Chase, this action, combined with the various fraudulent transfers delineated in Visiting Judge Lessen's March 1, 2005 Opinion, warrant the imposition of an equitable lien in Chase's favor.

## ANALYSIS

**I. The Doctrine of Res Judicata Bars Chase's Equitable Lien Claim**

In its initial Complaint Objecting to the Debtor's Exemptions (C.P. 4), and in the four Amended Complaints filed thereafter, Chase included a count alleging the creation and existence of a constructive trust in its favor against the debtor's assets, due to "the fraudulent and inappropriate

actions of Gosman subsequent to the effective date of the Negative Pledge." [Paragraphs 68-72 of Complaint Objecting to the Debtor's Exemptions (C.P. 4); Paragraphs 68-72 of Amended Complaint Objecting to the Debtor's Exemptions and Seeking to Recover Fraudulent Transfers (C.P. 12); Paragraphs 68-76 of Second Amended Complaint Objecting to the Debtor's Exemptions and Seeking to Recover Fraudulent Transfers (C.P. 34); Paragraphs 68-76 of Third Amended Complaint Objecting to the Debtor's Exemptions and Seeking to Recover Fraudulent Transfers (C.P. 40); Paragraphs 88-96 of Fourth Amended Complaint Objecting to the Debtor's Exemptions and Seeking to Recover Fraudulent Transfers (C.P. 255)]  Each of the referenced counts recites identical language relating to the creation of a constructive trust in Chase's favor. Specifically, each of the "constructive trust" counts sets forth a prefatory statement that the relief sought in the referenced count or section is "as a secondary alternative objection, to be considered by the Court if and only if the Court denies all other objections to the Debtor's exemptions filed by the Chapter 7 Trustee, Colonial Bank, or any other party in interest." The issues raised by Chase relating to its constructive trust theory became moot, however, with the entry of this Court's March 1, 2005 Opinion issued by Visiting Judge Lessen, which disallowed the debtor's claimed exemptions as to a myriad of property interests.

> Based on the foregoing, the Court finds that the challenged transfers -North County Road transfer of July 30, 1999, the artwork and furnishings transfer of October 10, 1999, the $2 million transfer of October 10, 1999, the Blossom transfer of November 14, 2000, the $3.1 million transfer of the Gulfstream proceeds, the February 5, 2001 transfer of $600,000 - were made with the actual intent to hinder, delay, and defraud creditors. The transfers were also constructively fraudulent. Ms. Gosman did not provide reasonably equivalent value in exchange for the transfers, and Mr. Gosman was insolvent at the time of each of the transfers. Moreover, Mr. Gosman was not paying his debts as they came due at the time of each of the transfers, and

>each transfer deepened Mr. Gosman's insolvency. The transfers had the added effect of leaving Mr. Gosman with inadequate capital. Therefore, all of the transfers are avoided under Fla. Stat. § 726.105.

*Luzinski v. Gosman*, Judge Lessen Opinion (C.P. 506), Pg. 42 , Adversary Proceeding No. 02-3155-BKC-SHF-A,(March 1, 2005).

The result of Judge Lessen's Opinion made the alternative relief, a constructive trust sought by Chase, moot due to the determination that the transfers of exempt property, in fact, were avoided as fraudulent. Therefore, to permit Chase to revisit the issue of a constructive trust as to the homestead proceeds would result in re-litigating matters which already have been adjudicated by way of Judge Lessen's March 1, 2005 Opinion, and therefore are barred by the doctrine of res judicata.

## II.   The Circumstances *Sub Judice* Do Not Warrant The Imposition of an Equitable Lien[3]

The Florida homestead exemption is construed liberally and the three exceptions to the Florida homestead exemption are construed narrowly and strictly. *Havoco of America. Ltd. v. Hill,* 790 So.2d 1018 (Fla. 2001). A limited legal basis has been established for imposing an equitable lien on homestead. The first case from the Florida Supreme Court to impose an equitable lien determined that the imposition of a lien was proper due to the embezzlement of funds by an employee who, in turn, used the funds to make improvements to the home. *Jones v. Carpenter,* 106 So. 127 (Fla. 1925). The Court in *Jones* elaborated that if the money had been obtained through a valid contract and then utilized to make home improvements, the imposition of an equitable lien would not be appropriate. *Id.* In *Palm Beach Savings & Loan Association, F.S.A v. Fishbein,* 619 So.2d 267 (Fla. 1993), the Florida Supreme Court allowed an equitable lien against homestead property wherein

---

[3] While the motion before the Court is a Motion to Dismiss JPMorgan Chase Bank's Motion to Impose an Equitable Lien on Homestead, both sides effectively argued the merits of the Motion to Impose an Equitable Lien at the February 13, 2007 hearing.

monies were obtained fraudulently by use of a forged mortgage instrument and then utilized to satisfy a valid mortgage. In *Chauncey v. Dzikowski,* 454 F.3d 1292 (11 Cir. 2006), the Eleventh Circuit Court of Appeals referenced the standard for imposing an equitable lien by stating that it may be necessary to reach beyond the literal language of the Florida homestead exemption to invoke an equitable lien against homestead property when funds were obtained through fraud or egregious conduct and utilized to invest in, purchase, or improve the homestead. *Id.* at 1294.

As to the first prong of the equitable lien test, that of obtaining the funds through fraud or egregious conduct, the circumstances surrounding the loans between Mr. Gosman and Chase cannot be deemed to have been obtained fraudulently or by egregious means. Mr. Gosman and Chase had a valid contract for a loan. Chase made the determination to extend to Mr. Gosman funds in excess of $35 million based upon the financial condition of Mr. Gosman as it existed at the time of the loan. At some point in the contractual relationship, Mr. Gosman agreed that he would not sell, convey or encumber any of his assets, including his homestead, without the express written consent of Chase. Thereafter, Mr. Gosman, in fact, did take out a valid mortgage on his homestead. While this does appear to be a breach of the contract between Chase and Mr. Gosman, it does not rise to the level of obtaining funds through fraud or egregious conduct. As such, the first prong of the equitable lien test is not met.

The second prong to be considered as to the imposition of an equitable lien against homestead proceeds is whether fraudulently obtained funds were utilized to invest in, purchase or improve the homestead. There has been no allegation that the money obtained through the loan from Chase was utilized for the purchase of or improvement to the homestead. Instead, Chase alleges that the homestead, which was utilized as a pledge to provide additional collateral to Chase, was diluted

of its value by way of a mortgage granted to another lender. The case law identifying the very narrow circumstances warranting the imposition of an equitable lien has never deviated from the two fundamental elements: 1) that the money was obtained fraudulently or through egregious conduct, and 2) that the money obtained was utilized to invest in, purchase or improve the homestead. The Court finds that neither of the two prongs has been satisfied. As such, the factual basis advanced by Chase to support the imposition of an equitable lien against Mr. Gosman's homestead proceeds fails as a matter of law. Accordingly, Mr. Gosman's Motion to Dismiss JPMorgan Chase Bank's Motion to Impose an Equitable Lien on Homestead is **granted** and JPMorgan Chase Bank's Motion to Impose an Equitable Lien on Homestead is **denied as moot.**

###

**The Clerk of Court is directed to provide a copy of this Order to all parties in interest.**